UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Petition of

CERTAIN FUNDS, ACCOUNTS AND/OR INVESTMENT VEHICLES MANAGED BY AFFILIATES OF FORTRESS INVESTMENT GROUP LLC,

    Petitioners,

pursuant to 28 U.S.C. § 1782 to issue subpoenas upon KPMG LLP, KPMG International Cooperative, PricewaterhouseCoopers LLP, and PricewaterhouseCoopers International Limited, for the production of documents and oral testimony for use in foreign proceedings.

14 CV 1801

Action No. _____



## DECLARATION OF JACK NEUMARK

I, JACK NEUMARK, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that to the best my knowledge, information and belief, the following is true and correct. I submit this Declaration based upon my own personal knowledge, in support of the Petition For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use In Foreign Proceedings, filed by FCOF II UB Securities LLC; FTS SIP LP; FCO MA II UB Securities LLC; FCO MA Maple Leaf LP; FCOF UB Investments LLC; FGOY Securities Ltd; FCOF UB Securities LLC; FCO MA II LP; FCO MA LSS LP; FCO Europe MA ML Limited; FCOF II UB Investments LLC; FPFD Corporates LTD; FPFO Corporates LTD; and CF SDC LLC (collectively, "Petitioners").

1.    My name is Jack Neumark. I reside in Bronxville, New York, and am over the age of 18. I am currently a Managing Director of FIG LLC, an affiliate of Fortress Investment Group LLC ("FIG") (collectively with Petitioners, "Fortress"), a global investment management firm, where I serve as a legal analyst focused on analyzing legal issues related to new and

existing investments, managing positions in restructuring and bankruptcy, and originating, executing and structuring distressed and special situations investments. I have been employed by FIG LLC since May 2010.

2. As part of my responsibilities, I am familiar with the interests that the Petitioners, funds, accounts and/or investment vehicles managed by affiliates of Fortress Investment Group LLC, currently hold related to various debt instruments from the Saad Group and its affiliates (collectively, "Saad Group") and Ahmad Hamad Algosaibi and Brothers Company and its affiliates (collectively, "AHAB" and together with Saad Group, "Saad Group and AHAB"). These instruments, aggregating to a collective face value of approximately $380,778,840, include promissory notes, bills of exchange, term loans, trading facilities, bilateral debt, syndicated debt, and *sukuk* certificates. I am also knowledgeable about various foreign legal proceedings in which Petitioners, by virtue of their holdings in debt issued by Saad Group and AHAB, have direct interests, as well as claims that Fortress intends to initiate in foreign courts and judicial tribunals related to Petitioners' holdings in Saad Group and AHAB debt instruments.

3. Fortress owns approximately 20% of the *sukuk* Certificates issued by the Golden Belt 1 Sukuk Company B.S.C.(c) ("GB1" or "Golden Belt"), a special purpose vehicle incorporated and registered in Bahrain. A *sukuk* is a financial instrument that resembles a corporate bond, though it is intended to be structured in a way that complies with Sharia (Islamic) law. The GB1 *sukuk* involved $650 million of Certificates (or shares), issued in May 2007 and scheduled to mature in 2012. The GB1 *sukuk* is backed by promissory notes from the Saad Trading, Contracting & Financial Services Company ("Saad Trading"). In November 2009, Saad Trading, which was to make the rental payments to GB1 used to make period distributions to the GB Certificateholders, posted a statement on the Bahrain stock exchange

2

indicating that it was unable to perform its payment obligations under the *sukuk*. Thereafter, Saad Trading has failed to make any additional payments under the GB1 *sukuk*, and GB1 has failed to make any of the scheduled distributions to the GB Certificateholders.

4. The face value of the GB1 *sukuk* Certificates held by Petitioners is approximately $129,040,000. To the best of my knowledge, Petitioners own the largest single interest in GB1.

5. In August 2007, Saad Investments Company Limited ("SICL") entered into a Syndicated Revolving Credit Facility of approximately $2.8 billion. Petitioners currently hold an approximately $35 million face value interest in this SICL credit facility.

6. Petitioners also hold an approximately $23.9 million face value interest in a bilateral debt facility owed by Saad Trading, as well as an approximately $60 million face value interest in syndicated debt owed by Saad Trading.

7. All of the debt instruments owed by Saad Group entities in which Petitioners hold interests, which aggregate to a face value interest of approximately $247.9 million, are currently in default.

8. Petitioners also hold interests, with an aggregate face value of approximately $132.8 million, in various debt instruments issued by AHAB entities. Those interests include (i) an approximately $18,859,163 bill of exchange with AHAB; (ii) an approximately $8,947,250 promissory note from AHAB; (iii) an approximately $12,499,333 AHAB term loan; (iv) an approximately $5 million interest in a trading facility with Al Gosaibi Trading Services Ltd.; (v) an approximately $27,033,094 interest in an on-demand trading facility with Al Gosaibi Trading Services Ltd.; (vi) an approximately $18.75 million interest in syndicated debt owed by AHAB;

a (vii) an approximately $40 million interest in a trading facility with Al Gosaibi Trading Services Ltd.[1]; and (viii) a $1.75 million loan owed by TIBC.

9. As with Petitioners' Saad Group holdings, all of Petitioners' AHAB holdings are in currently in default.

10. As a significant creditor of these now-largely-defunct entities, Fortress has taken steps to learn about the circumstances leading to the collapse and to recoup its multi-million dollar losses. These efforts include retaining legal advisors in several different jurisdictions to investigate and/or pursue legal remedies available to Fortress throughout the world. In addition, Fortress has held in-person discussions with representatives of the Saad Group and AHAB, as well as with representatives of the United States Government and the Kingdom of Saudi Arabia, in an attempt to secure a non-judicial remedy, all to no avail. Fortress has interests in several pending proceedings in various foreign jurisdictions, and intends to initiate additional foreign proceedings in the near future, as more fully described below.

11. As noted above, due to Saad Trading's failure to make rental payments to GB1, GB1 has defaulted on the payment of the scheduled distributions to the GB1 Certificateholders. As a result, GB1 has sought to enforce the promissory notes provided by Saad Trading. By the terms of documents governing the GB1 *sukuk*, the Saudi Negotiable Instruments Committee ("NIC") has jurisdiction over disputes concerning the promissory notes. On March 21, 2011, GB1 filed a Statement of Claim in the NIC against Saad Trading and Mr. Al Sanea for payment of the full sum due under the promissory note, $650 million.

12. GB1's claim remains pending today, and any judgment received by GB1 should be distributed to the Certificateholders, including Petitioners, which, again, own approximately

---

[1] To the best of my knowledge, only approximately 28.9% of this trading facility was drawn at the time of default.

20% of the GB1 Certificates. Given its substantial monetary interest, Fortress monitors the progress of the NIC proceedings. Despite nearly three years of proceedings, a judgment from the NIC on GB1's claim does not appear imminent. The progress of the proceedings has been delayed repeatedly, as judges have routinely failed to appear at hearings and defense counsel have refused to accept service of process or even identify their client's address.

13. SICL has been the subject of insolvency proceedings in the Cayman Islands since August 2009. As a significant creditor to SICL, Petitioners are entitled to a share of its liquidated assets. Accordingly, Fortress receives periodic reports from the joint official liquidators (the "JOLs") appointed to oversee the liquidation. Fortress expects that SICL will remain in liquidation for the foreseeable future. To my knowledge, no creditor distributions have been made to date.

14. TIBC has been the subject of insolvency proceedings in Bahrain since June 2009. As one of TIBC's creditors, Petitioners have a right to its share of TIBC's liquidated assets. Accordingly, we receive periodic reports from TIBC's external administrators. As with SICL, Fortress expects that TIBC will remain in liquidation for the foreseeable future. To my knowledge, no creditor distributions have been made to date.

15. In addition to its interests in the foregoing proceedings, Fortress expects to initiate additional proceedings before foreign courts and tribunals relating to its interests in debt instruments owed by the Saad Group and AHAB.

16. First, Fortress intends to instigate claims relating to some or all of approximately $100 million worth of debt instruments owed by Saad Group and AHAB, including an approximately $18,859,163 bill of exchange owed by AHAB; an approximately $8,947,250 promissory note owed by AHAB; an approximately $12,499,333 term loan owed by AHAB; an

approximately $5 million trading facility owed by AHAB; an approximately $23.9 million bilateral facility owed by Saad Trading; and an approximately $27,033,094 trading facility owed by AHAB. Fortress has been advised by Saudi counsel that, depending the type of debt, either the NIC or the Saudi Committee for the Settlement of Banking Disputes are the appropriate forums to prosecute these claims.

17. Second, Fortress anticipates that it will bring claims against those responsible for the faulty financial reports that misled investors into purchasing interests in GB1, including Saad Trading, Contracting and Financial Services Company ("Saad Trading") and the accounting firms that provided audit opinions on the financial statements included in the Golden Belt 1 prospectus. The accounting firms include KPMG Al-Fozan & Bannaga (a KPMG member firm in Saudi Arabia), Al Juraid & Company (a PwC member firm in Saudi Arabia), and PricewaterhouseCoopers (Middle East Group Limited). Fortress has retained counsel to investigate and prosecute these claims. Consistent with provisions in applicable GB1 Transaction Documents, Fortress anticipates this proceeding would be brought in English courts.

18. Third, it has been widely reported that the Kingdom of Saudi Arabia or its agencies immediately froze the assets of Mr. Al Sanea, Saad Trading, AHAB, and its partners, and then required the repayment of debts by those entities only to Saudi Banks. Fortress believes that the Saudi government's handling of these debts, specifically the failure to treat foreign creditors equitably, violates generally accepted standards and practices of international insolvency law and treaties between the United States and Saudi Arabia. Fortress has retained counsel to seek relief from the Kingdom of Saudi Arabia or its agencies in relation to these violations.

Pursuant to 28 U.S.C. § 174, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Executed on March 13, 2014 in New York, New York.

March 13, 2014

_____
Jack Neumark