```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
In re Petition of

CERTAIN FUNDS, ACCOUNTS, AND/OR
INVESTMENT VEHICLES MANAGED BY              MEMORANDUM AND ORDER
AFFILIATES OF FORTRESS INVESTMENT
GROUP LLC,                                  14 Civ. 1801 (NRB)

               Petitioners,

pursuant to 28 U.S.C. § 1782 to issue
subpoenas upon KPMG LLP, KPMG
International Cooperative,
PricewaterhouseCoopers LLP, and
PricewaterhouseCoopers      International
Limited for the production of
documents and oral testimony for
use in foreign proceedings.
-----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On March 20, 2014, certain funds, accounts, and/or investment vehicles managed by affiliates of Fortress Investment Group LLC ("petitioners") applied ex parte to this Court for an order pursuant to 28 U.S.C. § 1782 authorizing them to obtain discovery from KPMG LLP and PricewaterhouseCoopers LLP (together, the "Domestic Auditors"), as well as their international affiliates KPMG International Cooperative and PricewaterhouseCoopers International Limited (together, the "International Auditors"). Petitioners seek documents and testimony from these auditors for use in three pending

1

international proceedings, as well as in additional actions that petitioners hope to bring in the future.   For the reasons set forth below, petitioners' application is denied.

## BACKGROUND[1]

Fortress Investment Group is a global investment manager headquartered in New York City.  Pet'rs' Appl. at 2.  Acting on behalf of their institutional clients and private investors, Fortress and its affiliates, the petitioners in this case, invested in a series of debt instruments and notes from two Saudi Arabian business conglomerates – the Saad Group and Ahmad Hamad Algosaibi and Brothers Company ("AHAB").  Id. at 1, 5.

Specifically, petitioners hold the single largest interest in the Golden Belt 1 sukuk ("GB1"), an investment vehicle resembling a corporate bond but structured in a way that complies with principles of Shari'a law, which is owed monies by a Saad Group entity under a promissory note.   Id. at 2. Additionally, petitioners hold substantial financial interests in other debts and notes owed by the Saad Group, AHAB, and their affiliates.   Id.   These various debt instruments and other financial holdings – which include promissory notes, bills of

---

[1] The following facts are derived from petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceeding ("Pet'rs' Appl."), petitioners' Declaration in Support of its Application ("Pet'rs' Decl."), and the Declaration of Jack Neumark, Managing Director of FIG LLC, an affiliate of Fortress Investment Group LLC ("Neumark Decl.").

exchange, term loans, trading facilities, bilateral debt, syndicated debt, and sukuk certificates – aggregate to a collective face value of approximately $380 million. Neumark Decl. ¶ 2.

All of these financial instruments issued by AHAB, the Saad Group, and their affiliates are now in default, allegedly as a result of a massive fraud perpetrated by Maan Al Sanea, the Chairman of the Saad Group who also controlled various AHAB subsidiaries. Pet'rs' Appl. at 5, 8. Mr. Al Sanea was allegedly the mastermind of a fraudulent scheme in which he would borrow billions of dollars from banks and other financial institutions on behalf of AHAB, apparently without the knowledge of AHAB's senior leadership. Id. at 8. According to a previous application for 28 U.S.C. § 1782 assistance filed by AHAB in the Southern District of New York, Mr. Al Sanea accomplished this fraud by using forged documents and dummy lenders that were used as a cover for Mr. Al Sanea to misappropriate the borrowed funds. Id. at 6. The money, once fraudulently borrowed, was then funneled to Saad Group entities owned by Mr. Al Sanea. Id. at 9.

The end result of this alleged fraud was that many international investors, including petitioners, held substantial interests in the various investment vehicles and debt

instruments which were suddenly in default. Neumark Decl. ¶ 3.
As petitioners explain it, "billions of dollars in net worth in
major, longstanding businesses evaporated overnight without any
rational explanation." Pet'rs' Appl. at 12.  These defaults
triggered a series of international judicial proceedings, two
clusters of which are particularly relevant to petitioners'
application.

First, following the failure of the Saad Group's principal
trading company ("Saad Trading") to make its periodic payment to
the holders of the GB1 Certificates, the issuer of the sukuk,
Bahrain-based Golden Belt 1 Sukuk Company, filed a Statement of
Claim against Saad Trading in the Negotiable Instrument
Committee of Saudi Arabia ("NIC"). Pet'rs' Appl. at 23-24. The
NIC is a quasi-judicial committee with binding authority to
resolve disputes related to negotiable instruments. Id. at 22.
Petitioners hold approximately 20% of the sukuk certificates,
although GB1 has failed to make any of the scheduled
distributions to the GB1 Certificate holders. Neumark Decl. ¶
3. That claim remains pending today. Id. ¶ 12.

Secondly, there are pending liquidation proceedings in the
Cayman Islands and Bahrain against Saad Group and AHAB entities
in which petitioners hold substantial financial interests as
creditors. Specifically, insolvency proceedings are underway in

the Cayman Islands involving the Saad Investment Company Limited ("SICL"), the holding company for the Saad Group's assets outside of Saudi Arabia which was incorporated in 1990 as a limited liability Cayman Islands entity. Pet'rs' Appl. at 5. Petitioners hold a $35 million (face value) interest in a $2.8 billion Syndicated Revolving Credit Facility that SICL issued in August 2007. Id. at 24. In Bahrain, The International Banking Corporation ("TIBC"), an AHAB subsidiary that was allegedly controlled by Mr. Al Sanea, is in court-ordered liquidation. Id. Petitioners hold a $1.75 million (face value) interest in loans to TIBC. Id. In both of these insolvency proceedings, petitioners are entitled to a share of the liquidated assets. Neumark Decl. ¶ 13-14. The petitioners expect that the entities in question will remain in liquidation for the foreseeable future, and to their knowledge no creditor distributions have been made to date in either proceeding. Id.

Additionally, petitioners plan to bring three future judicial proceedings. Pet'rs' Appl. at 25. First, petitioners intend to bring additional claims against the Saad Group and AHAB related to nearly $100 million in promissory notes and various other debt instruments currently owed to petitioners. Id. Petitioners have retained Saudi counsel who have advised them that the appropriate forum would either be the Saudi NIC or

the Committee for the Settlement of Banking Disputes, another quasi-judicial committee under the Saudi Central Bank.  Neumark Decl. ¶ 16.  Second, petitioners intend to bring tort and breach of contract claims against those responsible for the faulty financial reports that misled investors, including KPMG, PricewaterhouseCoopers ("PwC"), and other accounting firms that audited the financial statements included in the GB1 prospectus. Pet'rs' Appl. at 25.  Petitioners anticipate bringing these actions in English courts.  Id.  Finally, petitioners have instructed their advisors to seek relief from the Kingdom of Saudi Arabia for apparent discrimination against foreign creditors in the settlement of debts owed by Mr. Al Sanea, the Saad Group, AHAB, and their affiliates, allegedly in violation of treaties entered into between the United States and Saudi Arabia as well as standards and practices of international insolvency law.  Neumark Decl. at 6.  It is unclear from petitioners' application whether they have a specific judicial forum in mind in which to bring such claims.

Petitioners now seek to conduct discovery against KPMG and PwC, whose member firms provided auditing, review, and other services to Saad Group and AHAB entities in the years leading up to their collapse.  Pet'rs' Appl. at 26.  Specifically, KPMG's member firms in Saudi Arabia and Egypt were involved in auditing

AHAB-related businesses as well as Saad Group financial statements. Id. at 16. PwC's Dubai member firm was involved as an auditor for Saad Trading in 2005 and 2006. Id. at 17. However, Petitioners seek discovery from the US-based KPMG and PwC affiliates, as well as KPMG International, a Swiss cooperative formed under Swiss law, and PricewaterhouseCoopers International Limited, a private company, limited by guarantee, incorporated in England and Wales. Id. at 15-16.

## DISCUSSION

### I.   Legal Standard

The Second Circuit has interpreted § 1782 as having two broad aims: "[(1)] providing efficient means of assistance to participants in international litigation in our federal courts and [(2)] encouraging foreign countries by example to provide similar means of assistance to our courts . . . ." In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997). A district court is authorized to grant a § 1782 request when the petitioner demonstrates "(1) that the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) that the discovery [is] for use in a proceeding before a foreign tribunal, and (3) that the application [is] made by a foreign or international tribunal or any interested person." Schmitz v.

Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (internal quotation marks omitted).  "Once the statutory requirements are met, 'a district court is free to grant discovery in its discretion.'"  Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) (quoting Schmitz, 376 F.3d at 83-84); see also In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) . . . .").

The Supreme Court provided further guidance for district courts in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).  In that case, the Court listed additional factors, beyond the statutory requirements, that warrant consideration when ruling on a foreign discovery application.  "First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  Id. at 264.  "Second, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  Id.  "[Third], a district

8

court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States.   [And fourth], unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 264-65.   However, these discretionary factors are only relevant if the statutory criteria are met.

## II.  Analysis

### A. Location of Discoverable Material

In examining a party's request to conduct discovery for use in a foreign proceeding, courts have read into § 1782 a threshold requirement that the material sought be located in the United States. See In Re Kreke Immobilien KG, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013).   The petitioners have not persuaded the Court that the documents sought are located in the United States, and the details they do provide about KMPG and PwC's involvement in the relevant audits strongly suggest that the materials are likely located abroad. The KPMG affiliates involved in auditing AHAB-related businesses and performing anti-money laundering and terrorism funding compliance reviews were based in Saudi Arabia and Egypt. Pet'rs' Appl. at 16.  A Dubai-based PwC member firm, Al Juraid & Company, is listed on an auditor's report for a Saad Trading Financial Statement on December 31, 2005, while the next year's

report for Saad Trading lists "PricewaterhouseCoopers," again with a Dubai address. Id. at 17. Petitioners do not suggest, and there is no evidence which indicates, that the Domestic Auditors were involved in any way with the audits of the various entities controlled by Mr. Al Sanea or AHAB, which are the subjects of the current and contemplated legal proceedings abroad. Because each KPMG and PwC member firm operates independently, and is a distinct legal entity, petitioners have not persuaded the Court that each member firm shares documents from their particular audits or activities with the Domestic Auditors, such that these documents would be located in the United States.

However, although the Court has some reservations about the likely location of the documents being sought, we need not reach this issue because we find that petitioners have not satisfied the statutory requirements.

**B. Statutory Factors**

**1. Person From Whom Discovery is Sought Must "Reside" or be "Found" in the Judicial District**

The first statutory requirement is that the party from whom discovery is sought must "reside" or be "found" in the relevant judicial district where the application is filed. 28 U.S.C. § 1782(a). Since there are two categories of parties from whom

petitioners seek discovery – the Domestic Auditors and the International Auditors – we analyze them separately.

### a. The Domestic Auditors

Petitioners are correct that the Domestic Auditors have their corporate offices and principal place of business in Manhattan, so they are naturally "found" in the Southern District of New York. Pet'rs' Appl. at 29, citing In Re Gemeinshcaftspraxis, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (when a corporation "maintains its headquarters in New York, [it is] thus is [sic] 'found' within this district for purposes of Section 1782"). While, again, the Court is not convinced that the material sought by petitioners would actually be in the possession of the Domestic Auditors, it is clear that they are "found" in this District. 28 U.S.C. § 1782(a).

### b. The International Auditors

Petitioners argue that since the International Auditors "engage in systematic and continuous local activities — including locating senior officers in New York City — [they] are also 'found' in the judicial district." Pet'rs' Appl. at 3. They argue that numerous leaders of KPMG International, including its Global Head of Audit and the Global Vice Chairman of Quality and Risk Management, reside in New York. Id. at 15.

Similarly, they argue that numerous leaders of PWC International, including its Chairman and General Counsel, also reside in New York. Id. at 17. Although petitioners acknowledge that KPMG International is a Swiss cooperative formed under Swiss law, and that PwC International is a private company incorporated in England and Wales, petitioners contend that the presence of key officials from these entities in New York is sufficient to demonstrate that the entities themselves are "found" in the Southern District of New York. Id. at 29. This argument is unavailing. A corporate entity is not "found" in a judicial district merely because certain high-ranking officials reside there.

Petitioners also argue that the Court's recent opinion in Kreke supports their position that the International Auditors are "found" in this district for purposes of § 1782. In Re Kreke Immobilien KG, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *3 (S.D.N.Y. Nov. 8, 2013). However, in Kreke, the respondent was a German bank operating in New York, and the New York office did not exist as a separate legal entity, but was one of many offices of the bank. Id. Here, by contrast, the International Auditors and their member firms throughout the world are distinct legal entities. While they share "numerous worldwide policies and training courses," as well as electronic tools and

auditing methodologies, Pet'rs' Appl. at 15-17, they do not operate in a corporate hierarchical structure like that of the respondent bank in <u>Kreke</u>.

The documents that petitioners seek are the products of audits and investigations conducted by KPMG and PwC member firms in Dubai, Saudi Arabia, and Egypt. Pet'rs' Appl. at 16-17. These entities are distinct in a legal sense from KPMG and PwC International, and KPMG International and PwC International are in turn distinct from their New York-based member firms. The connection between the International Auditors and the Southern District of New York is simply too attenuated to render them "found" here for purposes of § 1782. Thus, petitioners fail to satisfy the first statutory requirement as it relates to the International Auditors.

### 2. Information Sought Must Be For "Use" in a Proceeding Before a Foreign Tribunal

The second statutory requirement under § 1782 is that the information sought must be for "use" in a foreign proceeding. 28 U.S.C. § 1782(a). Petitioners cite two theories to support their claim that the materials unearthed during discovery will be used in foreign proceedings. First, they argue that the discovery sought here is relevant to pending proceedings in Saudi Arabia, Bahrain, and the Cayman Islands. Pet'rs' Appl. at 33-34. Second, they argue that the material is relevant to the

proceedings that the petitioners are contemplating in the future. Id. Neither theory is convincing.

### a. Current Proceedings

With respect to the pending proceedings in Saudi Arabia, Bahrain and the Cayman Islands, petitioners have not presented persuasive evidence that they would, in fact, be able to use the materials in these tribunals. They are not a party to any of the current proceedings and have failed to demonstrate how, if at all, they would be permitted to submit the materials uncovered through discovery to the tribunals in question. While it is true that § 1782 neither requires that the material sought be discoverable in the foreign legal system, Intel Corp v. Advanced Micro Devices, Inc., 524 U.S. 241, 260-263 (2004), nor that it be admissible in the foreign jurisdiction, In Re Bayer AG, 146 F.3d 188, 193 (3d Cir. 1998), the statute does require that there be some discernible procedural mechanism whereby the discovered material could actually be used in the foreign tribunals in question. Petitioners have failed to demonstrate to the Court that such a mechanism exists in this case.

Petitioners contend that the bankruptcy proceedings in Bahrain and the Cayman Islands are, "in all material respects, the same sort of proceedings as those underlying the successful application for Section 1782 discovery" in In Re Application of

Hill, No. M19-117 (RJH), 2005 WL 1330769, at *1 (S.D.N.Y. June 3, 2005).  Pet'rs' Appl. at 34.  However, this argument ignores the crucial distinction that in Hill it was the court-appointed liquidators who sought discovery for use in the bankruptcy proceedings, not a group of creditors.  While it may be true, as petitioners contend, that the court-appointed liquidators in the Cayman Islands proceedings have sought to acquire documents from PwC and have continually been frustrated in their efforts, Pet'rs' Appl. at 24, this would only be relevant if the liquidators themselves were petitioning this court for discovery to aid in their proceedings.[2]

### b. Planned Proceedings

Petitioners' second theory is that they plan to initiate several additional judicial proceedings abroad, and that these contemplated proceedings can satisfy the "use" prong of the statutory test because they anticipate being a named party in future litigation and the discovered material will be relevant to their claims.  Pet'rs' Appl. at 25, 35.  The Supreme Court has held that proceedings abroad for which discovery is sought

---

[2] A court in this district previously granted a § 1782 discovery request to AHAB itself when it sought to recover information about the whereabouts of various monies from US banks that Mr. Al Sanea allegedly used as part of his scheme. Ahmad Hamad Algosaibi & Bros. v. Standard Chartered Intl. (USA) LTD., 785 F.Supp.2d 434 (S.D.N.Y 2012). While discovery was granted in that case, AHAB – the party seeking discovery – was a party in both foreign proceedings for which the discovery was sought and therefore had a stronger claim that the materials would be "used" in those proceedings.

need not be already pending or even imminent, but that a "dispositive ruling" must be "within reasonable contemplation." Intel Corp v. Advanced Micro Devices, Inc., 542 U.S. 241, 259 (2004).

Some courts have read the Supreme Court's holding in Intel as allowing a court to grant discovery in cases where proceedings, and not just rulings, are "within reasonable contemplation." See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262 (11th Cir. 2014) (discovery granted where a party was conducting its own investigation in advance of filing a lawsuit in a foreign country); In Re Pimenta, 942 F.Supp.2d 1282 (S.D.Fla. 2013) (party seeking evidence for use in a planned secondary estate distribution proceeding in a foreign probate court awarded § 1782 discovery assistance).[3]  However, courts must guard against efforts by parties to engage in fishing expeditions before actually launching litigation.  "The district judge should satisfy himself that a proceeding is very likely to occur. If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request."  In Re Request for Assistance for Ministry of Legal Affairs of Trinidad and Tobago,

---

[3] Notably, petitioners point to no cases in the Second Circuit that have adopted this approach.

848 F.2d 1151, 1156 (11th Cir. 1988) (abrogated on other grounds
by Intel Corp v. Advanced Micro Devices, Inc., 542 U.S. 241
(2004)).   Courts must embrace Congress's desire that broad
discovery be available for parties involved in international
litigation while also guarding against the potential that
parties may use § 1782 to investigate whether litigation is
possible in the first place, putting the cart before the horse.
The latter situation is not an appropriate one for a court to
compel discovery.

Although the petitioners attest that they have retained
counsel to investigate and prosecute their claims in the planned
proceedings, the Court is not persuaded that this means that a
dispositive ruling by a foreign tribunal is within reasonable
contemplation.   Furthermore, the concerns about misuse of the
discovery process are particularly pronounced in this case,
since petitioners have had an opportunity to initiate judicial
proceedings abroad but have failed to do so.   Had petitioners
filed a lawsuit before submitting this application for
discovery, this concern would be mitigated.   But, because the
Court does not believe that a dispositive ruling is "within
reasonable contemplation" in this case, and because we are
concerned that this action is more akin to a fishing expedition,
we conclude that petitioners may not rely on their planned

17

proceedings to satisfy the statutory requirement that the material be for "use" in a foreign proceeding.

Therefore, we conclude that petitioners have failed to satisfy the second statutory requirement of § 1782.  Although this conclusion would have been a sufficient basis to deny the requested order, in an excess of caution we proceed to address the remaining statutory factor.

### 3. Application Must Be Made By a Foreign or International Tribunal or Any "Interested Person"

Finally, § 1782 requires that the discovery request must be made by a foreign court or tribunal or any "interested" person. 28 U.S.C. § 1782(a).  Here, the Court concludes that petitioners are not interested parties in the context of the pending international proceedings.  Petitioners do not have any existing role in those proceedings and have failed to demonstrate that they have a right to submit evidence to the foreign tribunals in question.

Petitioners cite Intel for the proposition that non-parties to foreign litigation can still qualify as "interested" parties for purposes of § 1782(a).  However, they overlook a crucial distinction between what the Supreme Court granted in Intel and what they ask this Court to do here.  In Intel, the party seeking discovery had initiated the original complaint and retained "significant procedural rights" before the

18

international tribunal, including a right to "submit relevant information" to the tribunal and the right to seek judicial review of the tribunal's ruling. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 242 (2004). Thus, while it is true that non-parties can qualify as "interested" under the statute, this requires a level of engagement with the litigation that is lacking in the case of a creditor to a foreign bankruptcy proceeding, where the creditor has a financial stake in the outcome, but does not have a stronger role in or connection to the proceeding.

Information submitted as part of petitioners' application is telling on this particular point. Petitioners claim that they "monitor the progress" of the Saudi NIC proceedings, and that they receive "periodic reports" from the court-appointed liquidators in the Cayman Islands and from the external administrators of TIBC, currently in liquidation proceedings in Bahrain. Neumark Decl. ¶ 12-14. Merely monitoring the progress of litigation and receiving updates from parties to the litigation are insufficient to make petitioners "interested" for purposes of § 1782.

The only authority that petitioners cite in support of the proposition that a § 1782 discovery request can be granted to aid in a foreign bankruptcy proceeding is In Re Application of

Hill, No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005). However, in that case it was the court-appointed liquidators themselves that sought the discovery, not an individual creditor seeking to recover assets from the bankrupted entity. Although not a party to the proceeding, the liquidators had a judicially-appointed duty to investigate the debtor's assets and assist the court in carrying out the insolvency proceeding to the fullest extent possible. That the instant insolvency proceeding in the Cayman Islands also involves court-appointed liquidators and that it is not they, but petitioners, that are seeking discovery, distinguishes In Re Hill from the present case.

Petitioners also argue that their significant financial stake in the GB1 sukuk makes them an interested party. However, the case they cite in support of this argument, In re Oxus Gold PLC, No. MISC 06-82-GEB, 2007 WL 1037387 (D.N.J. Apr. 2, 2007), dealt with a parent company seeking discovery for aid in foreign litigation in which its subsidiary was a party. Although petitioners hold twenty percent of the sukuk certificates, they are not in a parent-subsidiary relationship with the party that is actually litigating before the Saudi NIC, and their only involvement with the case is to "monitor the progress." Neumark Decl. ¶ 12.

Nor can petitioners use their potential role as named plaintiffs in the proceedings they intend to initiate to satisfy the third statutory requirement. While it is certainly true that parties to a foreign litigation qualify as interested parties – indeed, they are one of the clearest examples – the Court concludes that, because these contemplated proceedings are insufficient as a matter of law to qualify for § 1782 discovery assistance, see Part II(B)(2)(b), supra, they cannot be cited by petitioners as evidence of their "interest" as a party for purposes of § 1782. Thus, in conclusion, petitioners have failed to satisfy the third statutory requirement of § 1782.

## CONCLUSION

In conclusion, petitioners fail to meet the second and third statutory requirements of § 1782, as well as the first statutory requirement as it relates to the International Auditors. Because of this, we need not address the four discretionary factors articulated in Intel.

Accordingly, for the aforementioned reasons, petitioners' application for discovery under § 1782 is denied.

**SO ORDERED.**

DATED:     New York, New York
           July 8, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to
the following:

**Attorneys for Petitioners**

Thomas E. Lynch, Esq.
Jones Day
222 East 41st Street
New York, NY 10017-6702

Thomas F. Cullen, Jr., Esq.
David S. Torborg, Esq.
Melissa S. Gorsline, Esq.
Charles T. Kotuby, Jr., Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113