**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

N.Y.S.D. Case #
14-cv-1801(NRB)

---

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of August, two thousand and fifteen.

Before:     Dennis Jacobs,
            Guido Calabresi,
            Gerard E. Lynch,
                *Circuit Judge*s.

---

Certain Funds, Accounts and/or Investment Vehicles Managed by Affiliates of Fortress Investment Group L.L.C.,

    Plaintiffs - Appellants,

v.

KPMG, L.L.P., KPMG International Cooperative, PricewaterhouseCoopers L.L.P., PricewaterhouseCoopers International Limited,

    Defendants - Appellees.

**JUDGMENT**
Docket No. 14-2838

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _09/16/2015_

---

The appeal in the above captioned case from an order of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs.  Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the order of the district court is AFFIRMED.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

**MANDATE ISSUED ON 09/16/2015**

14-2838
Certain Funds v. KPMG LLP, *et al.*

1
2
3 **UNITED STATES COURT OF APPEALS**
4 FOR THE SECOND CIRCUIT
5
6 ————————————
7
8 August Term, 2014
9
10 (Argued: June 18, 2015    Decided: August 20, 2015)
11
12 Docket No. 14-2838
13
14 ————————————
15
16 CERTAIN FUNDS, ACCOUNTS AND/OR INVESTMENT VEHICLES MANAGED BY
17 AFFILIATES OF FORTRESS INVESTMENT GROUP L.L.C.,
18
19 *Plaintiffs-Appellants,*
20
21
22 — v. —
23
24 KPMG, L.L.P., KPMG INTERNATIONAL COOPERATIVE, PRICEWATERHOUSECOOPERS
25 L.L.P., PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED,
26
27 *Defendants-Appellees.*[*]
28 ————————————
29

———————————

[*] The Clerk of the Court is respectfully directed to change the official
caption to conform to the caption above.

1

| 1 | B e f o r e : |
| 2 | |
| 3 | JACOBS, CALABRESI, and LYNCH, *Circuit Judges*. |

4         ———————————

5

6       Plaintiffs-appellants investment funds sought, by *ex parte* application filed
7 pursuant to 28 U.S.C. § 1782, to discover certain documents from defendant
8 domestic and international accounting firms relating to audits conducted by their
9 Middle Eastern affiliates.  The district court (Naomi Reice Buchwald, *Judge*)
10 denied the application on several grounds.  We hold that (1) assuming *arguendo*
11 that the funds were "interested person[s]" in ongoing foreign proceedings, the
12 funds did not establish that the evidence they sought was "for use" in those
13 proceedings; and (2) the district court did not err in concluding that additional
14 proceedings that the funds asserted they intended to initiate were not "within
15 reasonable contemplation" at the time the application was made.  We accordingly
16 AFFIRM the judgment of the district court.

17         ———————————

18       DAVID S. TORBORG, Jones Day, Washington, D.C. (Louis K.
19       Fisher, David T. Raimer, Jones Day, Washington, D.C.,
20       Thomas E. Lynch, Jones Day, New York, N.Y., *on the brief*), for
21       *plaintiffs-appellants*.

22

23       ALLISON B. JONES (Kannon K. Shanmugam, *on the brief*),
24       Williams & Connolly LLP, Washington, D.C., *for defendant-*
25       *appellee KPMG L.L.P.*

26

27       KENNETH M. KATZ (William R. Maguire, Yoshinori Sasao, *on*
28       *the brief*), Hughes Hubbard & Reed LLP, New York, N.Y., *for*
29       *defendant-appellee KPMG International Cooperative.*

30

31       ANTHONY L. RYAN (Thomas G. Rafferty, Samira Shah, *on the*
32       *brief*), Cravath, Swaine & Moore LLP, New York, N.Y., *for*
33       *defendant-appellee PricewaterhouseCoopers International Limited.*

34

1       James J. Capra, Jr., King & Spalding LLP, New York, N.Y., *for*
2       *defendant-appellee PricewaterhouseCoopers L.L.P.*
3
4

5  GERARD E. LYNCH, *Circuit Judge*:

6       In this case, we consider several aspects of 28 U.S.C. § 1782, the statute

7  providing assistance to litigants in proceedings before foreign and international

8  tribunals.  The statute authorizes a district court, "upon the application of any

9  interested person," to order a party "found" in the judicial district in which the

10  court sits to produce discovery "for use" in a foreign proceeding.  28 U.S.C. §

11  1782(a).  Plaintiffs-appellants investment funds sought, by *ex parte* application, to

12  discover certain documents from the defendant American and international

13  accounting firms relating to audits conducted by their Middle Eastern affiliates.

14  The district court (Naomi Reice Buchwald, *Judge*) denied the application on

15  several grounds.  We conclude that (1) assuming *arguendo* that the funds were

16  "interested person[s]" in ongoing foreign proceedings, the funds did not

17  establish that the evidence they sought was "for use" in those proceedings; and

18  (2) the district court did not err in finding that additional proceedings that the

19  funds asserted they intended to initiate were not "within reasonable

20  contemplation" at the time the application was made.  We accordingly AFFIRM

1    the judgment of the district court.

2    **BACKGROUND**

3    Plaintiffs-appellants are certain funds, accounts, and/or investment

4    vehicles managed by affiliates of Fortress Investment Group, LLC ("the Funds").

5    The Funds held interests collectively amounting to roughly $380 million in two

6    Saudi conglomerates, the Saad Group ("Saad") and Ahmad Hamad Algosaibi

7    and Brothers Company ("AHAB").  The largest of these interests was an interest

8    in the Golden Belt 1 ("GB1") *sukuk*, a financial instrument issued by Saad.[1]  The

9    Funds' interest in the GB1 *sukuk* was valued at $129 million, which amounted to

10   about 20% of the *sukuk*'s aggregate value, making the Funds the single largest

11   holder of its certificates.  The Funds held various other investments issued by

12   Saad and AHAB, including participation in a Cayman Islands holding

13   corporation for Saad's assets outside of Saudi Arabia, valued at $35 million.

14   In 2009, AHAB began reporting financial problems that were traced to

15   fraud and embezzlement of the conglomerate's assets by Maan Al Sanea, the

16   owner of Saad.  In response to the alleged fraud, the Saudi Arabian Monetary

---

[1] A *sukuk* resembles a corporate bond but is structured to comply with Shari'a law.

1    Authority froze all of Al Sanea's assets.  This prompted Moody's to withdraw all

2    ratings for Saad.  Other international regulatory authorities reacted, including, as

3    relevant here, the Central Bank of Bahrain, which seized control of several

4    subsidiaries of Saad and AHAB, and the Grand Court of the Cayman Islands,

5    which issued a worldwide freezing order against Al Sanea and dozens of

6    companies owned by Saad, including the one in which the Funds held their $35

7    million interest.  As a result of these events, all of the financial instruments of

8    Saad and AHAB, once worth several billion dollars, are now in default.

9           Various legal actions were instituted in several countries in the wake of the

10   conglomerates' default.  First, the Delegate of the GB1 *sukuk* brought a claim in

11   Saudi Arabia against Saad and Al Sanea to enforce the promissory notes that

12   made up the *sukuk*.  That claim was originally brought before the Saudi

13   Negotiable Instruments Committee, a quasi-judicial body that has binding

14   authority to resolve disputes related to negotiable instruments.  The claim has

15   now been withdrawn, however, and (after the district court's decision in this

16   case) refiled before the Saudi Banking Disputes Committee, another

17   quasi-judicial committee with jurisdiction over bank debt.  Second, proceedings

18   to liquidate the Cayman Island holding corporation were initiated in the Cayman

1    Islands.  Third, a proceeding to liquidate the assets of an AHAB affiliate in which

2    the Funds held an interest was commenced in Bahrain.

3         Nearly five years after the Saudi conglomerates' default, the Funds filed an

4    *ex parte* application in the United States District Court for the Southern District of

5    New York pursuant to 28 U.S.C. § 1782 seeking documents and other evidence

6    relevant to these foreign proceedings from the accounting firms KPMG L.L.P.,

7    KPMG International Cooperative, PricewaterhouseCoopers L.L.P., and

8    PricewaterhouseCoopers International Limited (collectively, "the firms").  KPMG

9    L.L.P. and PricewaterhouseCoopers L.L.P. are United States-based accounting

10   firms ("the U.S. firms"), while KPMG International Cooperative and

11   PricewaterhouseCoopers International Limited are firms incorporated,

12   respectively, in Switzerland and England ("the international firms").  According

13   to the Funds, affiliates of the firms in Saudi Arabia, Egypt, and Dubai audited

14   various companies owned by AHAB and Saad that were involved in the

15   offerings and investments that the Funds held.[2]  Therefore, they contend, the

---

[2] The parties dispute what role, if any, the defendant firms played in the audits conducted by Middle Eastern accounting firms affiliated with them; what control, if any, the international firms wield over their Middle Eastern affiliates; and where the international firms are located.  Given the bases on which we resolve this appeal, we need not address these disputes.

1    firms are likely to have information about the finances of the two conglomerates

2    that will be highly useful and relevant to the pending proceedings in the various

3    foreign jurisdictions.

4         In addition to the ongoing proceedings described above, the Funds alleged

5    that they intended to use the information sought through their § 1782 application

6    in several legal actions that the Funds planned to initiate directly.  As part of their

7    application before the district court, the Funds asserted that they "intend[ed] to

8    instigate claims against the Saad Group and AHAB before" the two Saudi quasi-

9    judicial committees, "intend[ed] to bring claims, sounding in tort and breach of

10   contract, against those responsible for the faulty financial reports that misled

11   investors into purchasing interests in GB1" in English court, and intended to seek

12   other relief "from the Kingdom of Saudi Arabia or its agencies."  App'x 110-11,

13   133.

14        The district court denied the Funds' § 1782 application.  The court held that

15   the Funds sought documents primarily from the international firms, which are

16   both different entities from the New York-based U.S. firms, and that the

17   international firms were not "found" in the judicial district in which the

7

1    application was filed.[3]

2           With respect to the ongoing foreign proceedings, the district court also

3    held that the information the Funds sought was not "for use" in a foreign

4    proceeding, because the Funds were not a party to any of the pending

5    proceedings, and there was no "discernible procedural mechanism" whereby the

6    discovered material would actually be used in the foreign proceedings.  Special

7    App'x 14.  The district court held, moreover, that the Funds had failed to

8    demonstrate that they were "interested person[s]" in the context of the pending

9    foreign proceedings, because they had no role in those proceedings and did not

10   establish that they had a right to submit evidence to the foreign tribunals in

11   question.  Id. 18.  Although acknowledging that a non-party can be an "interested

12   person" under the statute, the district court held that simply being a creditor of a

13   debtor that is the subject of a liquidation proceeding is not enough to confer such

14   status.

15          With respect to the contemplated proceedings, although the Funds had

---

[3] The court rejected the Funds' argument that the international firms are
found in the Southern District of New York because several of their top officials
reside in Manhattan, holding that a corporate entity is not found in a judicial
district merely because certain high-ranking executives reside there.

1    retained counsel to investigate and prosecute their claims in the planned

2    proceedings, the district court held that a "dispositive ruling by a foreign tribunal

3    . . . [was not] within reasonable contemplation."  Id. 17.[4]

4         Having concluded that the Funds failed to meet the statutory requirements

5    that establish the court's authority to order discovery under § 1782, the district

6    court did not reach the discretionary factors that determine whether to grant the

7    application.  The Funds appealed.

**DISCUSSION**

8

9    I.    <u>Statutory Requirements</u>

10        28 U.S.C. § 1782 provides, in pertinent part: "The district court of the

11   district in which a person resides or is found may order him to . . . produce a

12   document . . . for use in a proceeding in a foreign or international tribunal . . .

13   upon the application of any interested person . . . ."  We have summarized the

14   statute as setting forth three requirements: that "(1) the person from whom

15   discovery is sought resides (or is found) in the district of the district court to

16   which the application is made, (2) the discovery be for use in a proceeding before

---

[4] The district court also questioned, but did not decide, whether the
documents the Funds sought were located in the United States.

1    a foreign tribunal, and (3) the application be made by a foreign or international

2    tribunal or any interested person."  Brandi-Dohrn v. IKB Deutsche Industriebank

3    AG, 673 F.3d 76, 80 (2d Cir. 2012).  Once the statutory requirements are met, a

4    district court may order discovery under § 1782 in its discretion, taking into

5    consideration the "twin aims" of the statute, namely, "providing efficient means

6    of assistance to participants in international litigation in our federal courts and

7    encouraging foreign countries by example to provide similar means of assistance

8    to our courts."  In re Metallgesellschaft, 121 F.3d 77, 79 (2d Cir. 1997) (internal

9    quotation marks omitted).  Because the district court here denied the Funds'

10   § 1782 application solely on statutory grounds, and did not reach the

11   discretionary factors, our review is de novo.  See In re Application for an Order

12   Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign

13   Proceedings, 773 F.3d 456, 459 (2d Cir. 2014); In re Edelman, 295 F.3d 171, 175 (2d

14   Cir. 2002).

15   II.    Analysis

16          The international firms contend, and the district court held, that no

17   discovery can be ordered as to them, because they are not "found" in the

18   Southern District of New York, where the application was made.  We need not

10

1    address that argument, however, because we conclude that the Funds have failed

2    to establish that the discovery they seek is "for use" in a foreign proceeding.

3    Since that failure defeats the Funds' application as to *all* the defendants,

4    including the U.S. firms, who concededly *are* found in the District, we proceed

5    directly to that issue.[5]

6         To satisfy the second and third statutory requirements, an applicant for a

7    § 1782 order must be an "interested person," and must establish that the

8    discovery sought is "for use in a proceeding before a foreign tribunal."  Brandi-

9    Dohrn, 673 F.3d at 80.  The Supreme Court analyzed these statutory requirements

10   in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).  In that case,

11   the § 1782 applicant had filed an antitrust complaint against Intel with the

12   Directorate-General for Competition of the European Commission.  Id. at 246,

13   250.  That complaint triggered a preliminary investigation by the Directorate-

---

[5] For the same reason, we need not address defendants' argument that the U.S. firms are not proper recipients of a subpoena issued pursuant to § 1782, because they are not in possession of the documents that the Funds seek.  At least where a non-frivolous reason has been given for averring that the recipient possesses the documents sought, we are skeptical as to whether such a contention is properly resolved on an *ex parte* application for discovery, rather than on a more fully developed record generated by, for example, a motion to quash or a response to the subpoena asserting that no responsive documents have been found.

1    General into the alleged anti-competitive behavior.  In that investigation the

2    applicant, as initiator of the complaint, had the right to present evidence.  <u>Id</u>. at

3    254, 256.  The investigation would ultimately lead to a formal written decision on

4    whether to pursue the complaint.  If the Directorate-General declined to proceed,

5    or if the European Commission failed to sustain its complaint, the § 1782

6    applicant could seek review of that decision in the European courts.  <u>Id</u>.  In light

7    of that procedure, the Supreme Court ruled, the applicant "ha[d] a significant

8    role in the process," including various "participation rights" in the proceeding.

9    <u>Id</u>. at 256.  Moreover, the Court concluded, the applicant "could 'use' evidence in

10   the reviewing courts . . . by submitting it to the Commission in the current,

11   investigative stage," and then relying on that evidence before the Commission

12   itself and the reviewing courts.  <u>Id</u>. at 257-58.  The Supreme Court thus concluded

13   that the applicant "qualifie[d] as an 'interested person' within any fair

14   construction of that term," <u>id</u>. at 256, and that the discovery sought was "for use

15   in a foreign or international tribunal," <u>id</u>. at 257.

16          We make two preliminary observations about the Supreme Court's

17   decision in <u>Intel</u>.  First, the Court did not lay down minimum requirements or

18   tests to be met in determining whether the party seeking discovery is an

1    "interested person" or whether the discovery is sought "for use" in a foreign

2    proceeding.  The Court appeared to regard the case before it as an easy one, in

3    effect finding that the facts before it were sufficient to satisfy the requirements of

4    the statute, and not suggesting that facts identical to those in <u>Intel</u> were necessary

5    to meet those requirements.  Second, the Court's analysis suggests that, while the

6    "interested person" and "for use" requirements are independent, there is

7    considerable overlap between them.  The applicant's "participation rights" in

8    <u>Intel</u>, on which the Court relied in finding that the applicant was an "interested

9    person," prominently included the applicant's ability to use the evidence it

10   sought in the U.S. courts before the foreign administrative tribunal and courts by

11   submitting the evidence to the investigating agency in the foreign proceedings.

12           A.    <u>Ongoing Foreign Proceedings</u>

13           The defendant firms argue that the Funds are not "interested person[s]"

14   with respect to the ongoing proceedings in Saudi Arabia, Bahrain and the

15   Cayman Islands, because they lack the kind of "participation rights" possessed

16   by the applicant in <u>Intel</u>.  It is unquestionably true that the Funds do not have

17   participation rights similar to the § 1782 applicant in that case.  The Funds have

18   made no showing that they are able to present evidence to any of the tribunals

1    conducting those proceedings, or to appeal or otherwise seek further review, in

2    courts or other institutions, of any decision reached in those proceedings, as the

3    applicant could do with respect to the Commission proceedings in <u>Intel</u>.  If such

4    rights are necessary for an entity to constitute an "interested person" within the

5    meaning of § 1782, the Funds do not qualify.

6         We are cautious about reaching that conclusion in the absence of a need to

7    reach the question, however.  As noted above, the <u>Intel</u> Court did not state that

8    such rights were necessary for an applicant to constitute an "interested person,"

9    appearing to find that "participation rights" such as those possessed by the

10   applicant there qualified it as an interested person "within any fair construction

11   of that term."  <u>Id</u>. at 256.  Moreover, in rejecting Intel's argument that "interested

12   person[s]" under the statute must be "litigants" or formal parties to a proceeding,

13   the Court cited with approval the expansive definition provided by Hans Smit, a

14   leading academic commentator on the statute who played a role in its drafting.

15   <u>Id</u>. at 256-57.  Professor Smit maintained that the phrase "any interested person"

16   is "intended to include not only litigants before foreign and international

17   tribunals, but also foreign and international officials as well as any other person .

18   . . [who] merely possess[es] a reasonable interest in obtaining the assistance."

14

1     Hans Smit, <u>International Litigation Under the United States Code</u>, 65 Colum. L.

2     Rev. 1015, 1027 (1965).

3           The Funds argue on appeal that they are "interested person[s]" in that

4     broader sense, in that they have a reasonable interest in obtaining judicial

5     assistance in the ongoing foreign proceedings.  They base that argument on their

6     substantial financial interest in the entities that are the subject of the ongoing

7     proceedings, their ability to influence those proceedings through the Delegate or

8     trustees pursuing claims in the respective proceedings, and because of their

9     status as creditors of the Saad and AHAB affiliates being liquidated in the

10    Cayman Islands and Bahrain.

11           Preliminarily, we doubt that the Funds' *financial* interest in the outcome of

12    the foreign proceedings alone could be sufficient to confer "interested person"

13    status under the statute.  Various entities may have a financial stake in litigation

14    to which they have no direct connection:  Shareholders in a company facing a

15    products liability suit are likely to have a financial interest in the outcome of that

16    suit; multiple competitors may have a financial interest in an antitrust case

17    brought by the government; a wide range of media companies may have a

18    financial interest in a libel case involving one newspaper.  Most legal cases

1    involve such externalities and have implications, including financial ones, for

2    persons beyond the parties formally participating in the case.  Congress cannot

3    have intended to confer "interested person" status on all possible *amici curiae*

4    when it passed § 1782.[6]

5              Whether the Funds are "interested person[s]" based on their alleged ability

6    to put evidence before other persons who *are* parties to the foreign proceedings,

7    or by dint of their status as creditors in the liquidation actions, are closer

8    questions.  On the one hand, the ability simply to pass on information to parties

9    in a proceeding, without more, cannot confer "interested person" status any

10   more than the ability of *amicus* counsel to pass along evidence and arguments to

11   counsel representing one of the parties in litigation.  On the other hand, an

12   established *right* to provide evidence and have the party consider it, as the § 1782

13   applicant had in <u>Intel</u>, 542 U.S. at 256, or a recognized relationship, such as that of

---

[6] The Funds' reliance on <u>Esses v. Hanania</u>, 101 F.3d 873, 875-76 (2d Cir. 1996), is unavailing.  There, we rejected an argument that "a potential beneficiary of an estate should not be recognized as an interested party."  But the beneficiary in that case was also a *party* to the foreign proceedings.  <u>See</u> <u>id</u>. at 875; <u>accord</u>, <u>Akebia Therapeutics, Inc. v. FibroGen, Inc.</u>, — F.3d —, 2015 WL 4284817, at *2 (9th Cir. July 16, 2015) (rejecting argument that applicant was not "interested person" where it was "a party to the foreign proceedings underlying this case").  We have never held, nor even suggested, that a mere financial interest confers "interested person" status under § 1782.

1    an agent and principal, see Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38,

2    42 (2d Cir. 1996) (agent of trustee in bankruptcy proceeding is "interested

3    person" for purposes of § 1782), may be sufficient to make an otherwise stranger

4    to the proceeding an "interested person."  Similarly, the role of a creditor under

5    the relevant jurisdiction's law might confer certain procedural rights that allow

6    the creditor to participate and submit evidence in the proceeding.  See, e.g., 11

7    U.S.C. § 1109(b) (under U.S. bankruptcy law, "[a] party in interest, including . . . a

8    creditor . . . may raise and may appear and be heard on any issue in a case under

9    this chapter").

10          We need not decide whether any of these circumstances might, in an

11   appropriate case, render a party an "interested person" within the meaning of

12   the statute, however, because even if the Funds qualify for that designation, they

13   have identified no way in which they can "use" the evidence they seek in any of

14   the ongoing foreign proceedings.  Without some means of injecting the evidence

15   into the proceeding, a § 1782 applicant cannot show that it has a role in the

16   proceeding, such that it may "use" the information, or, as we have recently said,

17   employ it "with some advantage."  Mees v. Buiter, — F.3d —, 2015 WL 4385296,

18   at *4 (2d Cir. July 17, 2015).  Consequently, even assuming that the Funds are

17

1  "interested person[s]" in the pending proceedings in Saudi Arabia, the Cayman

2  Islands, and Bahrain, we agree with the district court that their application fails to

3  satisfy the statute's "for use" requirement, because the Funds have not met their

4  burden of establishing that they are in a position to use the evidence they seek

5  through their § 1782 application in those ongoing foreign proceedings.

6      The Funds' primary argument that the information they seek regarding

7  Saad's and AHAB's financial status is "for use" in the pending proceedings is

8  that such information will be "highly relevant" to those proceedings.  Appellants'

9  Br. 33.  That argument is misplaced.  The relevance of the information sought to

10  the subject of the proceeding is not sufficient in and of itself to authorize the

11  district court to order discovery.[7]  By adopting the phrase "for use," Congress

12  plainly meant to require that § 1782 applicants show that the evidence sought is

13  "something that will be employed with some advantage or serve some use in the

---

[7] The relevance of the information sought may be necessary, however, insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be "for use" in that proceeding.  Cf. In re Chevron Corp., 633 F.3d 153, 162 (3d Cir. 2011) ("Inasmuch as relevant evidence is presumptively discoverable, the party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application." (internal quotation marks and alterations omitted)).

1    proceeding." <u>Mees</u>, 2015 WL 4385296, at *4.  The key question, therefore, is not

2    simply whether the information sought is relevant, but whether the Funds will

3    actually be able to *use* the information in the proceeding.  Framing the question

4    that way shows that the Funds' asserted relationships to the parties in the foreign

5    proceedings and their alleged participation rights are insufficient to establish that

6    they will be able to use the evidence obtained as required by the statute.

7          In the proceedings before the Saudi quasi-judicial committees currently

8    being pursued by the GB1 Delegate, the Funds assert that a 25% stake in the GB1

9    *sukuk* is necessary to direct the Delegate's actions, but they concede that they

10    hold only a 20% stake.  Consequently, the Funds are not in a position to direct the

11    Delegate to consider their evidence or submit that evidence to the tribunal.  Even

12    assuming that the Funds have the ability to submit information to the Delegate,

13    who can then decide whether or not to use that information, that does not

14    establish that the information is "for use" in a foreign proceeding; it establishes,

15    at best, that the Funds can furnish information *in the hope* that it might be used.[8]

---

[8] We assume without deciding that the quasi-judicial committees constitute
a foreign "tribunal" for purposes of the statute.  The Funds do not argue,
however, that the Delegate itself, like the Directorate-General of the European
Commission in <u>Intel</u>, can be regarded as an agency or tribunal; the Delegate
rather appears to be in the nature of a trustee who acts on behalf of the holders of

1    That is no different from a third party providing information to a private litigant

2    that it believes might be useful in a lawsuit, or a witness approaching a

3    prosecutor's office claiming to have knowledge of a crime.  Such information

4    might be relevant or interesting to the recipient, but it is not "for use" in any

5    proceeding in which the *recipient* is a party unless the recipient takes some

6    further, independent action to introduce it.

7         The Funds also allege that they "may submit probative evidence to the

8    foreign tribunal," App'x 138, presumably meaning directly to the Saudi

9    committees, but they do not explain how they are in any position to have the

10   committees consider that evidence.  They state in their brief on appeal (but did

11   not argue or present any evidence to the district court) that they are members of a

12   steering committee of AHAB creditors "seeking to resolve debts owed by

13   AHAB."  Appellants' Br. 9.  But they provide no information on what role, if any,

14   that steering committee plays in the Saudi proceeding or whether the steering

15   committee has any ability to put evidence before the quasi-judicial committees.[9]

---

interests in the *sukuk*.

[9] Counsel for the Funds also stated for the first time at oral argument that the Funds are part of a committee of certificate-holders of the GB1 *sukuk* that collectively hold a greater-than-25% interest in the *sukuk*, and therefore have the

1    The Funds accordingly fail to establish that any of the evidence they might obtain

2    could be used in the proceedings in Saudi Arabia.

3         Similarly, with respect to the proceedings to liquidate assets in the Cayman

4    Islands and Bahrain, the Funds assert various participation rights that we may

5    assume *arguendo* grant them interested person status, but that upon examination

6    reveal no mechanism by which they could use any information obtained through

7    a § 1782 order in the liquidation proceedings.  Specifically, the Funds assert that

8    their status as creditors in the Cayman Islands proceeding authorizes them to

9    "request the removal of an official liquidator; coordinate with other investors to

10   request that the liquidator apply to the court for a discovery order[;] request the

11   ability to participate in an oral examination; apply to the court with respect to the

12   exercise or proposed exercise of the liquidators' powers; . . . and seek to inspect

13   the company's records."  Id. 11-12 (internal quotation marks and citations

14   omitted).  As to the Bahraini proceeding, the Funds similarly assert that they

15   "have the ability to challenge before a competent court of law any proposal or

---

ability to direct the GB1 Delegate.  That argument has been forfeited.  See United
States v. Yousef, 327 F.3d 56, 115-16 (2d Cir. 2003) (argument forfeited when not
asserted in initial appellate brief).

1   decision made by the liquidator." Id. 13.[10]

2       All of these supposed participation rights allow the Funds, at best, to

3   "seek" or "request" to participate in the proceeding, or, perhaps, to challenge the

4   liquidator's decision in a *separate* proceeding.  See In re Ishihara Chem. Co., 251

5   F.3d 120, 126 (2d Cir. 2001) (evidence sought was not for use in proceeding that

6   had concluded, and was instead for use in new, separate proceeding), abrogated

7   on other grounds by Intel, 542 U.S. 241.  Contrast that to the right of the applicant

8   in Intel to seek review of the agency's determination *within the proceeding itself,*

9   and thus to use the evidence obtained through its § 1782 application in that

10  proceeding.  542 U.S. at 257 (applicant "could 'use' evidence in the reviewing

11  courts . . . by submitting it to the Commission in the current, investigative

12  stage").  Undoubtedly, information that the Funds could obtain regarding the

13  firms' audits of the conglomerates might be helpful to the trustees in the

14  liquidation proceedings in determining the proper distribution of the

15  conglomerates' assets.  To that end, however, there is nothing preventing the

16  trustees – or the GB1 Delegate in the Saudi proceeding – from seeking discovery

---

[10] The Funds also assert that their status as creditors in both liquidation proceedings entitles them to receive periodic reports regarding the proceedings.

22

1    in U.S. courts pursuant to § 1782.  Such information might also be useful to the

2    Funds in determining whether to attempt to challenge aspects of the liquidation.

3    But that does not imply that there is any way for the Funds to introduce that

4    information as evidence in the liquidation proceedings or on appeal.  The Funds

5    accordingly have failed to establish that any of the evidence they seek could

6    actually be used in any of the foreign proceedings that were pending at the time

7    they made their application.

8         Because the Funds failed to show any way that they could put before the

9    foreign tribunals the information they sought to discover, the district court

10   correctly concluded that the information was not "for use" in a foreign

11   proceeding.[11]  We consequently find no error in the district court's conclusion

---

[11] We have warned that district courts should avoid inquiring into foreign
evidentiary rules, see Brandi-Dohrn, 673 F.3d at 82, so as to keep the assessment
of § 1782 applications from becoming a "battle-by-affidavit of international legal
experts."  Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995).
The Funds interpret the district court's statement that there was no "discernible
procedural mechanism" for introduction of the discovered material as such an
inquiry into foreign admissibility standards.  We disagree.  Whether an applicant
will be able to furnish the material sought to the foreign tribunal, so that the
material may be "employed with some advantage or serve some use in the
proceeding," Mees, 2015 WL 4385296, at *4, is a separate question from whether
the discovered material will be admissible in the foreign proceeding.  The district
court's demand that the Funds identify some "discernible procedural
mechanism" for introducing the evidence they sought simply reflects the burden

1    that the evidence sought here was not "for use" in the ongoing foreign

2    proceedings.

3            B.    <u>Planned Proceedings</u>

4            In addition to the proceedings that were extant at the time they made their

5    application, the Funds asserted before the district court that they intended to use

6    the information they sought in three actions that they planned to initiate:

7    (1) direct claims brought against Saad and AHAB before the Saudi quasi-judicial

8    Negotiable Instruments and Banking Disputes Committees, relating to

9    obligations under promissory notes and various debt instruments; (2) a claim in

10    English courts, sounding in tort and breach of contract, "against those

11    responsible for the faulty financial reports that misled investors into purchasing

12    interests in [the] GB1 [*sukuk*]"; and (3) relief from "the Kingdom of Saudi Arabia

13    or its agencies" for alleged discriminatory conduct against foreign creditors in the

14    settlement of debts owed by the various investment instruments.  App'x 133-34.

15    Assuming that the Funds would actually be parties to these proceedings, and

---

on a § 1782 applicant to establish that it will have some means of actually using
the evidence in the foreign proceeding.  The inquiry is no more exacting than the
Supreme Court's discussion of "participation rights" in <u>Intel</u>.  <u>See</u> 542 U.S. at 256-
57.

1    that the information sought through their § 1782 application would be employed

2    to prove their claims, there is no question as to these proceedings that the Funds

3    meet the "interested person" and "for use" requirements.[12]  The question instead

4    is whether the planned actions are "proceeding[s] in a foreign or international

5    tribunal" within the meaning of the statute.

6           In Intel, the Supreme Court rejected the view, then prevailing in some

7    Courts of Appeals (including this one), that a § 1782 applicant could satisfy the

8    "for use in a proceeding before a foreign tribunal" requirement only when

9    "adjudicative proceedings are 'pending' or 'imminent.'"  542 U.S. at 259, quoting

10   In re Ishihara Chem. Co., 251 F.3d at 125.  Instead, the Court held, the statute

11   "requires only that a dispositive ruling by the [tribunal] be *within reasonable*

12   *contemplation*."  Id. (emphasis added).  The Court noted, citing Professor Smit,

13   that "[i]t is not necessary for the adjudicative proceeding to be pending at the

_____

[12] With respect to proceedings before the Saudi quasi-judicial committees, the Funds somewhat cryptically stated in their memorandum supporting the § 1782 application that they "intend[ed] to *instigate* claims" before the committees.  App'x 110 (emphasis added).  It is not clear whether by "instigate" they meant to initiate, or whether they meant the term literally as "to spur, urge on; to stir up, stimulate, incite, goad," Oxford English Dictionary 1044 (2d ed. 1989), *i.e.*, to instigate *someone else* to initiate such claims.  If the intended meaning is the latter, the Funds' role in any such proceeding, and accordingly their status as "interested person[s]" under § 1782, is dubious.

1    time the evidence is sought, but only that the evidence is eventually to be used in

2    such a proceeding." Id. (internal quotation marks and alterations omitted),

3    quoting Smit, International Litigation, at 1026.

4         Two conclusions may be drawn from the Supreme Court's discussion of

5    the "for use" requirement as it relates to proceedings that are contemplated, but

6    not yet initiated.

7         First, as the Court's formulation makes explicit, the planned proceedings

8    must be within *reasonable* contemplation.  In other words, the applicant must

9    have more than a subjective intent to undertake some legal action, and instead

10   must provide some objective indicium that the action is being contemplated.  In

11   this regard, our sister Circuits have stated that "a district court must insist on

12   reliable indications of the likelihood that proceedings will be instituted within a

13   reasonable time." Application of Consorcio Ecuatoriano de Telecomunicaciones

14   S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1270 (11th Cir. 2014) (internal

15   quotation marks omitted); accord, In re Letter of Request from the Crown

16   Prosecution Serv. of the U.K., 870 F.2d 686, 692 (D.C. Cir. 1989) (R.B. Ginsburg, J.)

17   (same).  We need not decide here what precisely an applicant must show to

18   establish such indications; it suffices to observe that the Supreme Court's

1    inclusion of the word "reasonable" in the "within reasonable contemplation"

2    formulation indicates that the proceedings cannot be merely speculative.  At a

3    minimum, a § 1782 applicant must present to the district court some concrete

4    basis from which it can determine that the contemplated proceeding is more than

5    just a twinkle in counsel's eye.

6        Second, the relevant question is whether "*at the time the evidence is*

7    *sought*, . . . the evidence is eventually to be used" in a foreign proceeding.  Intel,

8    542 U.S. at 259 (emphasis added) (internal quotation marks omitted).  In other

9    words, we assess the indicia of whether the contemplated proceedings were

10   within reasonable contemplation at the time the § 1782 application was filed.  At

11   oral argument, counsel for the Funds informed the Court that the action in

12   English court had finally been commenced, and that the litigation was pending.[13]

13   But we cannot consider that fact in assessing whether the district court correctly

14   determined that the English lawsuit was not within reasonable contemplation at

15   the time the application was filed.  We must instead consider the facts as they

---

[13] Counsel also asserted that the Cayman Islands liquidation proceeding was, as of oral argument, no longer pending, and the contemplated proceedings before the Saudi quasi-judicial committees could be resolved by settlement before being initiated.  The Funds appear to have abandoned any effort to seek relief directly from the Kingdom of Saudi Arabia.

27

1    were presented to the district court.

2         Reviewing the record at that stage, it is apparent that all that the Funds

3    alleged before the district court was that they had retained counsel and were

4    discussing the *possibility* of initiating litigation.  Accordingly, at the time the

5    evidence was sought in this case, the Funds had done little to make an objective

6    showing that the planned proceedings were within reasonable contemplation.  In

7    light of the substantial length of time between the Saudi conglomerates' default

8    in 2009 and the filing of the Funds' § 1782 application in 2014, we cannot say that

9    the district court erred in determining that the anticipated proceedings were not

10   within reasonable contemplation at that time.[14]

_____

[14] The Funds argue that the district court erred in drawing a distinction between a foreign proceeding being within reasonable contemplation and a "*dispositive ruling* by a foreign tribunal [being] within reasonable contemplation." Special App'x 17 (emphasis added).  The Funds are correct that that is a distinction without a difference.  Intel held that § 1782 "requires only that a dispositive ruling . . . be within reasonable contemplation." 542 U.S. at 259.  But there is little daylight between a proceeding being within reasonable contemplation and the resolution of that proceeding – by either dispositive ruling or by settlement – being within reasonable contemplation.  See Mees, 2015 WL 4385296, at *5 (noting that § 1782 requires only that the evidence sought under the statute be used "eventually" in a foreign proceeding, which "plainly encompasses use at any point in the proceeding").  Nevertheless, the district court did not rely on any such distinction, and instead correctly determined, based on the objective indicia before it, that the planned proceedings were not within reasonable contemplation.  The court went on to state, however, that it

28

1        Our conclusion that the district court did not err in finding, on the record

2    before it, that the prospective actions projected by the Funds were not then

3    within reasonable contemplation does not preclude a new application by the

4    Funds based on new circumstances, including the now-pending English

5    litigation.  See Mees, 2015 WL 4385296, at *7 ("[A] party may file a new

6    application upon a significant change in circumstances.").  But those changed

7    circumstances must be brought to the district court's attention in the first

8    instance, especially since they could affect the court's weighing of the

9    discretionary factors, if it were to determine that the statutory requirements are

10    met.  Now that the firms are on notice of the Funds' interest in discovery, there is

11    no longer a reasonable basis for proceeding *ex parte*.  Should such a new

12    application be made, therefore, the district court will have the benefit, as it did

13    not at the time of the initial *ex parte* application, of the full range of arguments

---

was concerned that the Funds' request was a mere fishing expedition, and had
the Funds actually initiated one of their direct suits, that concern would be
mitigated.  Although a district court is entitled to scrutinize the purposes of the
discovery request in its consideration of the discretionary factors, see Intel, 542
U.S. at 264-65, we reiterate that, to meet the *statutory* factors, "the foreign
proceeding need not be pending, so long as it is within reasonable
contemplation."  Mees, 2015 WL 4385296, at *5 (internal quotation marks
omitted).

1     made by the defendant firms, and should be in a better position to assess both the

2     statutory prerequisites to the district court's authority under § 1782 and the

3     discretionary factors bearing on whether, if those prerequisites are satisfied, the

4     district court will order discovery to be provided.

5     **CONCLUSION**

6        For the foregoing reasons, the district court's denial of plaintiffs-

7     appellants' § 1782 application is affirmed.